**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **HENRY TALIAFERRO,** | Civ. No. 2:12-cv-06087 (KM) |
| Plaintiff, | |
| v. | **OPINION** |
| **COMMISSIONER OF SOCIAL SECURITY,** | |
| Defendant. | |

**KEVIN MCNULTY, U.S.D.J.:**

Henry Taliaferro brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) seeking review of a final determination by the Commissioner of Social Security (the "Commissioner") denying, in part, his application for Supplemental Security Income ("SSI"). The Administrative Law Judge ("ALJ") found that Mr. Taliaferro was disabled beginning on May 1, 2010, but rejected his claim that he was disabled before that date. Mr. Taliaferro appeals from the latter, unfavorable portion of the ALJ's ruling. For the reasons that follow, the Commissioner's final decision is **AFFIRMED.**

## I.   LEGAL STANDARDS

### A. The Five-Step Sequential Analysis

Under the authority of the Social Security Act, the Social Security Administration ("SSA") has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920; *see also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).

*Step 1*: Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged

disability. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, move to step two.

Step 2: Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If so (*i.e.*, if the claimant has a severe impairment), move to step three.

Step 3: Determine whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A. If so, the claimant is automatically eligible to receive benefits; if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).

Step 4: Determine whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)-(f), 416.920(e)-(f). If not, move to step five. Up to this point (steps 1 through 4) the claimant has borne the burden of proof.

Step 5: The burden shifts to the SSA to demonstrate that the claimant, considering his or her age, education, work experience, and RFC, is capable of performing other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007).

## B. Standard of Review

As to legal issues, this Court's review is plenary. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). The factual findings of the Administrative Law Judge ("ALJ"), however, are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere

scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*; *accord Richardson v. Perales*, 402 U.S. 389, 401 (1971).

> [I]n evaluating whether substantial evidence supports the ALJ's findings . . . leniency should be shown in establishing the claimant's disability, and . . . the Secretary's responsibility to rebut it should be strictly construed. Due regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in this administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails.

*Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (internal citations and quotations omitted). But when there is substantial evidence to support the ALJ's factual findings, this Court must abide by them. *See Jones*, 364 F.3d at 503 (citing 42 U.S.C. § 405(g)).

## II.   BACKGROUND

On December 12, 2007, Henry Taliaferro (born on October 19, 1954), applied for disability benefits under Title XVI based on "Hepatitis C." Administrative Record ("AR"), Docket No. 7-6 at 114. In his initial application, Mr. Taliaferro alleged an impairment onset date of August 1, 2007.[1] *Id.* at 110. On June 12, 2008, the Commissioner found that Taliaferro was not eligible for Social Security Income under Title XVI of the SSA because he did not suffer from a severe impairment. AR, Docket No. 7-4 at 54–58. Upon reconsideration, he was again denied benefits on January 29, 2009. *Id.* at 62–64.

On February 24, 2011, ALJ Joel H. Freidman issued a partially favorable decision denying Mr. Taliaferro's claim for benefits for the period before May 1, 2010, but awarding benefits beginning on that date for knee and cardiac-related impairments. AR, Docket No. 7-2 at 7–19. The Appeals Council affirmed

---

[1] As Defendant notes, SSI benefits cannot be paid any earlier than the month after the month in which an SSI application is filed. Here, Plaintiff filed for benefits on December 12, 2007. *See* Docket No. 11 at 1; 42 U.S.C. § 1382(c)(7); 20 C.F.R. §§ 416.335, 416.501.

that decision on July 26, 2012, making the ALJ's decision final and appealable. *Id.* at 1–5. Taliaferro filed an appeal in this Court on September 28, 2012. Docket No. 1.

## III.  DISCUSSION

As part of the five-step sequential evaluation process required by the SSA and the Third Circuit, *see supra,* the ALJ first found that Mr. Taliaferro had not engaged in substantial gainful activity since before the alleged onset date of his disability. At step two, the ALJ determined that, before May 1, 2010, Taliaferro's medically determinable impairment of Hepatitis C was not a "severe" impairment. AR, Docket No. 7-2 at 13; *see* 20 CFR § 416.921.

The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The corresponding regulations provide that "an impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521. Basic work activities are described as those "abilities and aptitudes necessary to do most jobs," including:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting.

*Id.*

In concluding that Mr. Taliaferro did not suffer from a severe impairment before May 1, 2010, the ALJ considered all alleged symptoms, objective medical evidence, and opinion evidence related to Taliaferro's underlying medically determinable physical impairment. The ALJ properly focused on the issue of

the extent to which those symptoms limited Taliaferro's ability to perform basic work activities. *See* AR, Docket No. 7-2 at 14. And the ALJ considered the totality of the evidence in assessing Taliaferro's assertions that "prior to May 1, 2010, he suffered from such tiredness, pain in his side, shortness of breath, sweats and/or nausea" and that "his ability to perform basic work-related functions such as lifting and walking was significantly limited." Those assertions, the ALJ found, were not credible. *Id.* (citing *Id.* at 21-51; AR, Docket No. 7-6 (Exhibits 2E, 4E, 6E); AR, Docket No. 7-7 (Exhibit 3F)). The ALJ thus rejected the claim of a severe impairment for the period *preceding* May 1, 2010.

As for the period *beginning* May 1, 2010, however, the ALJ found that Mr. Taliaferro suffered from a combination of impairments that surpassed the threshold of being "severe." Primary care records submitted after the May 25, 2010 administrative hearing revealed an abnormal EKG on May 3, 2010. AR, Docket No. 7-7 at 275–77. Taliaferro complained of tiredness at the time of the administrative hearing on May 25, 2010. Because treatment records from May 2010 had yet to be submitted at the time of the hearing, the ALJ requested that a post-hearing internal medical examination be arranged. AR, Docket No. 7-2 at 16. At this examination, Taliaferro also complained of right knee pain. The examining physician diagnosed him with a recent onset of cardiac arrhythmia and chronic right knee pain. AR, Docket No. 7-7 at 292.

The ALJ concluded that, in light of these impairments, Mr. Taliaferro's RFC was within the "light" range. AR, Docket No. 7-2 at 17; *see* 20 CFR § 416.967. Because Taliaferro's past relevant work as a handyman is not a light-exertion but a medium-exertion occupation, the ALJ found that he was unable to perform any past relevant work. *Id.* Noting Mr. Taliaferro's relatively advanced age, *see* § 416.963, limited education, *see* § 416.964, work experience, and light RFC, the ALJ concluded that there were no jobs existing in significant numbers in the national economy that Taliaferro could perform. Accordingly, the ALJ concluded that Taliaferro was disabled as of May 1, 2010. *Id.* at 18.

Substantial evidence in the Administrative Record supports the ALJ's conclusion that Taliaferro was disabled beginning on May 1, 2010, but not before. The Commissioner's final ruling is, therefore, affirmed for the reasons set forth below.

## A. Evidence that Hepatitis C did not constitute a severe impairment

Mr. Taliaferro argues that the Commissioner "abruptly and incorrectly" terminated the required sequential analysis at step two by concluding that he did not suffer from a severe impairment before May 1, 2010. Docket No. 10 at 13. Taliaferro raises two specific claims of error. First, he argues that his Hepatitis C condition, exhibited by "focal periportal fibrosis, grade 2 stage 1" and requiring Peg-Interferon antiviral injection treatment, necessitates a finding of severe impairment. Second, he argues that the ALJ failed to call a medical expert, as required by SSR 83-20.

### i. Whether the ALJ erroneously failed to find a severe impairment in light of the evidence

Mr. Taliaferro challenges the ALJ's conclusion that his Hepatitis C did not constitute a severe impairment. Taliaferro points to evidence that "in September of 2007 a liver biopsy proved that plaintiff suffered [from] Hepatitis C along with periportal fibrosis 'grade 2 stage 1' and ultimately required Interferon therapy." This evidence, he contends, "leaves no doubt" that he suffered from a severe impairment before May 1, 2010. *Id.* at 13–14.

It is uncontested that Taliaferro was diagnosed with Hepatitis C well before May 1, 2010. From February 2009 through January 2010, he received antiviral injections of Peg-Interferon, a drug used to treat hepatitis infection. And he alleges that he suffered from the side-effects of that "highly toxic, incredibly expensive and constitutionally debilitating regime of antiviral drugs . . . ." *Id.* at 14–15; *see* AR, Docket No. 7-7 (Exhibits 7F, 10F, and 11F).

Taliaferro cites the policy statement to SSR 96-3p, bearing on the step two "severity" analysis, which states:

> If the adjudicator finds that such symptoms cause a limitation or restriction having more than a minimal effect on an individual's ability to do basic work activities, the adjudicator must find that the impairment(s) is severe and proceed to the next step in the process even if the objective medical evidence would not in itself establish that the impairment(s) is severe.

SSR 96-3p. In *McCrea v. Comm'r of Soc. Sec.*, the United States Court of Appeals for the Third Circuit noted that the step two severity analysis is not an "exacting one":

> [A]n applicant need only demonstrate something beyond 'a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work.' SSR 85–28, 1985 WL 56856, at *3 . . . Any doubt as to whether this showing has been made is to be resolved in favor of the applicant. *Newell [v. Comm'r of Soc. Sec.]*, 347 F.3d at 546–47. In short, '[t]he step-two inquiry is a de minimis screening device to dispose of groundless claims.' *Id.* at 546 (internal citations omitted).

*McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004).

Taliaferro states that the evidence showed that his symptoms caused more than a minimal effect on basic work activities. AR, Docket No. 7-6 at 152. He concludes that "the ALJ's termination of the sequential evaluation at step two between December of 2007 and May 1, 2010 is illegal because the claimant's Hepatitis C represented more than a *de minimis* impairment imposing only light work related restrictions." AR, Docket No. 7-6 at 154.

Taliaferro was diagnosed with a Hepatitis C infection prior to May 1, 2010. That diagnosis, however, without evidence of severe impairment, is not dispositive. "[T]he presence of a disease does not establish disability within the Act." *Capoferri v. Harris*, 501 F. Supp. 32, 36 (E.D. Pa. 1980), *aff'd*, 649 F.2d 858 (3d Cir. 1981). *Accord Alexander v. Shalala*, 927 F. Supp. 785, 792 (D.N.J. 1995), *aff'd sub nom. Alexander v. Comm'r of Soc. Sec.*, 85 F.3d 611 (3d Cir. 1996). The applicant must also show that the impairment has significantly limited his ability to perform work functions.

It is true that step two of the sequential analysis serves a preliminary screening or gate-keeping function. That does not imply, however, a different or separate standard of review of step two determinations. *McCrea*, 370 F.3d at 360. A Commissioner's denial at step two, like other steps of the analysis, "is to be upheld if supported by substantial evidence on the record as a whole." *Id.* at 360–61.

The Commissioner points to substantial evidence that Taliaferro's impairment was not severe before May 1, 2010. "[T]he totality of the objective evidence including examination results, Taliaferro's activities, and even Taliaferro's treatment for Hepatitis C before May 2010," says the Commissioner, supports the ALJ's conclusion that Taliaferro's condition was "barely detectable for any significant time and did not result in any significant functional limitations to constitute a severe impairment . . . ." Docket No. 11 at 13. I agree.

After considering all the evidence, including Mr. Taliaferro's medical records and the opinions of agency medical experts, the ALJ found that Taliaferro's assertions that "he suffered from such tiredness, pain in his side, shortness of breath, sweats and/or nausea" and that "his ability to perform basic work-related functions such as lifting and walking was significantly limited" were not credible." AR, Docket No. 7-2 at 14. Specifically, the ALJ cited Taliaferro's medical records, which show that the only time Taliaferro's liver enzymes were elevated during the period in question was in December 2007, and that even then, they were only "slightly elevated." *Id.* The ALJ found from the medical records that the physical examinations of the liver were "consistently normal from December 2007 through May 2010." *Id* at 14–15.

Although diagnosed with Hepatitis C as early as 2007, Taliaferro did not begin treatment in earnest until February 2009. He received Peg-Interferon and related treatments through January 2010. AR, Docket No. 7-7 (Exhibits 10F and 11F). Except "during the initial month or so" of treatment, Taliaferro denied experiencing severe side effects. AR, Docket No. 7-2 at 15 (citing *id.*).

In April 2009, Mr. Taliaferro's "viral load" was "almost undetectable." AR, Docket No. 7-7 at 190. After a June 25, 2009 exam, his treating physician, Dr. Eileen Scarinci, reported that he "feels good" and is "100% adherent." *Id.* at 187. In September 2009, Taliaferro reported that he felt "great." *Id.* at 257. As late as April 30, 2010, the day preceding the disability finding, Taliaferro had completed treatment and was feeling "well." *Id.* at 242. Notably, a June 23, 2010 Medical Determination stated that the "blood work accompanying the charts from Jan 10 indicates undetectable viral level." *Id.* at 291. The ALJ also noted that, as sole caregiver to his son, who has cerebral palsy, Mr. Taliaferro was able to complete many tasks, including "making beds, cleaning and sweeping the apartment," shopping, going to the corner store, walking and cleaning after the dog, and going to his son's school." AR, Docket No. 7-2 at 15.[2]

Mr. Taliaferro moved from North Carolina to New Jersey in 2004. Although he alleges that his "condition" has prevented him from working since 2004, the earliest documentation of Hepatitis C dates from August 2007. The last year that he reported significant earnings was 2003.[3] AR, Docket No. 7-5 at 109. He admitted to doing some work "off the books," but not since the date of his application for SSI. AR, Docket No. 7-2 at 28. Mr. Taliaferro admitted to heroin use in the past, but states that he has since sought treatment.[4] *Id.* at

---

[2]    The Court does not minimize Mr. Taliaferro's burdens as a single father and a caregiver; disability, however, is a separate issue. Taliaferro rightly noted before the Appeals Council that the adjudicator should generally not consider "activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity" in determining whether a claimant is able to work. AR, Docket No. 7-6 at 154; 20 CFR 416.972(c). A fair reading of the ALJ's opinion, however, is that these day-to-day activities were surveyed as a part of the totality of the evidence, and were not critical to the ALJ's determination that Plaintiff was not suffering from a severe impairment.

[3]    While testifying, the ALJ asked Plaintiff why he stopped working. He noted that taking care of his son with cerebral palsy after his ex-wife passed away had been difficult to do and required significant time and effort. *See* n.2, *supra*; AR, Docket No. 7-2 at 35.

[4]    During the hearing before the ALJ in May 2010, Plaintiff testified that he continued to take Methadone daily. Docket No. 7-2 at 30, 42. The ALJ excluded from consideration limitations attributable to drug abuse. *Id.* at 15.

30. The ALJ commented that "even if the history of working off-the-books that the claimant related at the hearing, rather than substance abuse, is the reason for his weak earnings record, that could only detract from the credibility of any allegation of subsequent disability." *Id.* That weighing of the evidence is not the only possible one, but it is a permissible one.

The state agency medical consultants who participated in the adjudications agreed that Mr. Taliaferro's Hepatitis C was not severe. AR, Docket No. 7-3 at 52–53; Docket No. 7-7 at 173, 183. The ALJ found these expert opinions to be consistent with the totality of the other evidence. AR, Docket No. 7-2 at 15. Finding that there no was severe impairment prior to May 2010, the ALJ summarized the bases for his opinion as follows:

> [The finding] is supported by the no more than slight liver dysfunction demonstrated by laboratory evidence, the lack of notation of Hepatitis C symptoms by the primary care provider, the gap of nearly a year and a half between the diagnosis of Hepatitis C and the initiation of treatment for it, the absence of sustained adverse side-effects of treatment according to the treatment records, the claimant's bicycle riding in and about June 2009 and the performance of household chores, the plausible non-disability explanations for why earnings were not reported for the claimant, as well as the opinions of the DDS medical consultants who participated in the adjudications below.

*Id.* at 16.

That summary is well grounded in the evidence of record. There is substantial evidence to support the ALJ's finding that Taliaferro's Hepatitis C was not a severe impairment before May 1, 2010. Where, as is the case here, "the ALJ's findings of fact are supported by substantial evidence," this Court is bound by those findings, even if the Court would have decided the factual inquiry differently. *See Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)). The evidence does not suggest that Mr. Taliaferro's condition was so debilitating as to render him severely impaired before May 1, 2010. Consequently, the ALJ did not err in ending his analysis for this period at step two, denying benefits for the period preceding that date, and granting benefits for the ensuing period.

*ii. Whether the ALJ was required to call a medical expert pursuant to SSR 83-20*

Mr. Taliaferro challenges the ALJ's determination of the onset date of disability, arguing that the ALJ failed to conform to the demands of SSR 83–20. That policy statement, he contends, provides that the ALJ should have called a medical expert advisor to justify an onset date of severe impairment of May 1, 2010 due to Hepatitis C. Docket No. 11 at 15. Because Hepatitis C is a "slowly progressing impairment," Taliaferro says, SSR 83-20 applies to his case. *Id.* at 16.

Policy Statement SSR 83-20 provides that "[t]he onset date of disability is the first day an individual is disabled as defined in the Act and the regulations." SSR 83-20. In the case of a slowly progressing impairment, "it is sometimes impossible to obtain medical evidence establishing the precise date that an impairment became disabling." *Id.* It may thus be necessary "to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process." *Id.* When precise evidence is not available and the onset date must be inferred, "at the hearing" the administrative law judge "should call on the services of a medical advisor." *Id. See Jakubowski v. Comm'r of Soc. Sec.*, 215 F. App'x 104, 107 (3d Cir. 2007) (explaining that SSR 83–20 "dictates that an ALJ should call on the services of a medical advisor when he or she must infer the onset date of an impairment that is not clear from the applicant's medical records").

The Third Circuit has reversed an ALJ's determination of an onset date where there was "no legitimate basis for the conclusion of the ALJ on the onset issue" and where the ALJ opted to rely "on his lay analysis of the evidence" rather than "call upon the services of a medical advisor" pursuant to SSR 83-20. *Walton v. Halter*, 243 F.3d 703, 709 (3d Cir. 2001); *see also Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541 (3d Cir. 2003). The question remains,

however, whether Taliaferro's is the kind of case where such medical advisor testimony is required.

Persuasive case law has clarified that the SSR 83-20 medical expert mandate applies only where (1) the impairment at issue becomes progressively worse over an extended period of time and (2) the ALJ must infer the onset date based on unclear or nonexistent medical records. *See Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 618 (3d Cir. 2009) (not precedential) ("As the District Court noted, further decisions of our court have confirmed that Walton's directive to seek out the services of a medical advisor is limited to situations where the underlying disease is progressive and difficult to diagnose, where the alleged onset date is far in the past, and where medical records are sparse or conflicting."); *see also Klangwald v. Comm'r of Soc. Sec.*, 269 F. App'x 202, 205 (3d Cir. 2008) (not precedential) ("we have generally applied SSR 83–20 only where medical evidence from the relevant period is unavailable"); *Jakubowski*, 215 F. App'x at 108 (3d Cir. 2007) (not precedential) ("By contrast with *Newell* and *Walton* . . . the ALJ in this case had access to adequate medical records from the time period before the expiration of Jakubowski's insured status, and these records did not support her alleged onset date.").

Taliaferro's contention that SSR 83-20 required the ALJ to have a medical advisor testify is flawed for two reasons.

First, the ALJ never found that Hepatitis C was the "severe impairment" at issue, so its "onset date" was not central to the case. The ALJ found a disability beginning on May 1, 2010, based on newly-diagnosed cardiac and orthopedic impairments. In so finding, the ALJ specifically found that "[t]he Hepatitis C has not worsened. It remains non-severe." AR, Docket No. 7-2 at 16. Hepatitis C may well be a slowly progressing impairment, but here, the ALJ found that Hepatitis C, although diagnosed, was *not* a severe impairment. The ALJ was not obligated to determine the onset date of a nonexistent disability.

Second, even if Hepatitis C had been analyzed as a severe impairment, the SSR 83-20 mandate would not have applied. That policy statement requires

an ALJ to call on a medical advisor when the existing medical records do not permit a reliable conclusion as to the onset date. Here, the ALJ possessed, analyzed and cited to comprehensive medical records for the entire period in dispute. *See* AR, Docket No. 7-2; No. 7-7. The ALJ also referred to and relied upon the assessment of two state agency medical experts, Drs. Nancy Simpkins and Ibrahim Housri, in concluding that the Hepatitis C infection was not a severe impairment. *See* AR, Docket No. 7-3 at 52–53; Docket No. 7-7 at 173, 183. Consequently, even if the ALJ had concluded that Hepatitis C was an impairment that became severe only as of May 1, 2010, that ruling would not be reversible for failure to conform to the "medical advisor" procedure of SSR 83-20.

## B. Evidence that tachycardia and a right knee impairment constituted a severe impairment beginning May 1, 2010

In his brief here, Mr. Taliaferro does not raise the issue of whether his cardiac or orthopedic impairments were severe prior to May 2010; his argument is limited to Hepatitis C. Docket No. 10 at 11. In his brief before the Appeals Council, however, Mr. Taliaferro argued his cardiac and orthopedic impairments, too, had an onset dated earlier than May 1, 2010. AR, Docket No. 7-6 at 147. For completeness, I discuss the issue very briefly.

The ALJ found, based on medical records, that the cardiac and knee impairments were both newly complained of, examined, and diagnosed in May and June 2010. AR, Docket No. 7-2 at 16; Docket No. 7-7 at 291–299. An assessment following a January 1, 2010 exam reported only Hepatitis C; there was no record of additional complaints or impairments. AR, Docket No. 7-7 at 247. Taliaferro's Disability Reports, *see* Docket No. 7-6, refer only to Taliaferro's Hepatitis C infection as a basis for receiving benefits. All medical records prior to 2010 refer only to Taliaferro's Hepatitis C infection and related treatment, examinations, and reports. It appears from his medical records that Mr. Taliaferro first complained of tachycardia on May 14, 2010. AR, Docket No. 7-7 at 239. He had a normal physical examination that day. *Id.* An examination on June 23, 2010 found that Taliaferro was not in acute distress and had no

difficulty getting on and off the exam table. The examining doctor diagnosed Taliaferro with "[r]ecent onset of arrhythmia" and "chronic right knee pain." *Id.* at 291–92.

There is substantial evidence to support (and no evidence against) the Commissioner's finding that these newly-diagnosed impairments became severe as of, and not before, May 1, 2010.

## IV.   CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED.** An appropriate order follows.

KEVIN MCNULTY
United States District Judge

Dated: September 24, 2013